**Opinion filed June 23, 2022**



# In The

# Eleventh Court of Appeals

_____

## No. 11-21-00293-CV

_____

## IN THE INTEREST OF K.G. AND K.G., CHILDREN

---

### On Appeal from the 35th District Court
### Brown County, Texas
### Trial Court Cause No. CV 1909354

---

## MEMORANDUM OPINION

This is an appeal from an order in which the trial court terminated the parental rights of the father of K.G. and K.G., appointed the mother as a possessory conservator, and appointed the Department of Family and Protective Services as the children's permanent managing conservator. The father filed this appeal. On appeal, he presents one issue in which he challenges the trial court's finding that the termination of his parental rights was in the children's best interest. We affirm the order of the trial court.

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed four of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), and (O). Appellant does not challenge these findings on appeal.

The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the children. *See id.* § 161.001(b)(2). In his sole issue on appeal, Appellant challenges both the legal and factual sufficiency of the evidence to support the trial court's best interest finding.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## II. *Evidence and Analysis*

The record shows that Appellant had a history of involvement with the Department of Family and Protective Services prior to this case. The 2019 intake involved in this case stemmed from Appellant and his paramour (Cassy) leaving five children home alone without adult supervision. Two of those children were Cassy's; two were Appellant's (eight-year-old K.G. and seven-year-old K.G.); and the youngest one, who had not yet turned one year old, was Appellant and Cassy's together.

Appellant and Cassy were both using methamphetamine "[o]ff and on" in 2019, and Appellant supplied Cassy with methamphetamine even though she was the primary caregiver for the children. During the Department's investigation of this case, Cassy tested positive for methamphetamine. Appellant refused to submit to a drug test at that time, but he denied using drugs.

However, not long thereafter, Appellant was arrested for possession of methamphetamine. A few weeks later, Cassy appeared to be under the influence when she dropped the children off at school. She tested positive for methamphetamine and amphetamine upon her return home from the school, and she admitted to the Department that she had "snorted" methamphetamine outside her residence while K.G. and K.G. and two of the other children were inside the residence. Cassy reported that she obtained the methamphetamine from Appellant and that she "last used" methamphetamine with Appellant. The Department removed the children from Appellant's care at that time. A few months after the children were removed, Appellant tested positive for methamphetamine. Although Appellant had three negative drug tests in early 2020, he thereafter failed to submit to drug testing as requested or could not be reached by the Department.

In September 2020, Appellant was tried and convicted by a jury for the offense of possession of a controlled substance. Two other pending charges against Appellant—child endangerment and felony theft—were dismissed. For his conviction, Appellant's punishment was assessed at confinement for ten years, but the imposition of that sentence was suspended and Appellant was placed on community supervision for ten years. Appellant was required to go to SAFPF for a period of time as a condition of his community supervision. The record reflects that, for the first year after the children were removed, Appellant was not incarcerated but that, during this time period, he failed to cooperate with the Department.

By the last day of trial, Appellant had been released from SAFPF and a halfway house and had gone back to work. Upon his release from the halfway house, Appellant moved in with Cassy. Cassy testified that Appellant loved his children, that he had changed, and that he was no longer doing drugs. We note that, at the time of Cassy's testimony, Appellant had only been out of the halfway house for

approximately two weeks. Cassy had recently relapsed; therefore, Appellant and Cassy's home would not be an appropriate place for the children. The record shows that Cassy tested positive for methamphetamine less than three weeks prior to the final day of trial.

Appellant had four living biological children in addition to K.G. and K.G. He did not have custody of any of those children, and he admitted that, at the time of trial, he was not in a position to be a managing conservator for K.G. and K.G. But he hoped to remain a possessory conservator and stated that he would love to have his children returned home to him. Appellant testified that he spent a lot of time with K.G. and K.G. and that they "did everything together" after he obtained custody of them from their mother (who also had a methamphetamine problem). In addition to discussing the close bond that he had with K.G. and K.G., Appellant testified that, since being placed in SAFPF, he had made positive changes in his life and did not "even drink alcohol anymore."

The Department's plan for the children was for them to remain with their maternal grandmother, for the mother to have limited possessory conservatorship, and for Appellant's parental rights to be terminated. K.G. and K.G. were doing very well in the care of their grandmother. Appellant had not talked to them in over a year, and he had not seen them since the day they were removed from Appellant's care. K.G. and K.G. indicated that they would like to stay with their grandmother—permanently. Their grandmother testified that she did not want to supervise visits between Appellant and the children and that she did not think supervised visits would be a good idea. She expressed concerns for the safety of K.G. and K.G.—based in part upon Appellant and Cassy still being together. The grandmother did not want the children "to have to go through this again." K.G. and K.G. were doing very well

at the time of trial and were over the disappointment of Appellant not being in their lives and not showing up for visitation.

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. We are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. Appellant's testimony regarding his recent strides does not necessarily overcome the probative value of his past history of drug use and irresponsible choices. *See In re J.F.-G.*, 627 S.W.3d 304, 316–17 (Tex. 2021); *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). Giving due deference to the trial court, we hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of K.G. and K.G.[1] *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of those involved, the plans for the children by the Department, Appellant's drug use, the use of drugs by Appellant's paramour (with whom he lived at the time of trial), Appellant's failure to visit or have any contact with the children for over a year, and the instability of Appellant's situation, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best interest of K.G. and K.G. *See id.* We defer to the trial court's finding as to the children's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot

---

[1]We note that the Department asked the trial court to take judicial notice of the contents of the court's file in this cause, in a related termination proceeding, and in the criminal proceedings involving Appellant and Cassy. Appellant's attorney indicated that he did not object, and the trial court stated that it would take judicial notice of the contents of those four files. However, three of those files are not part of the record in this appeal.

hold in this case that the trial court's finding as to best interest is not supported by clear and convincing evidence. Accordingly, we overrule Appellant's sole issue.

## III. *This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS
JUSTICE


June 23, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.